**René Jean and Yaël (wife)**
**c/o 1233 New Stansbury Road**
**Turtletown, Tennessee**

United States District Court
Chattanooga Divisional Office
United States Courthouse
900 Georgia Avenue
Chattanooga, Tenn. 37402

Certified Mail #7010 3090 0003 2628 1121

# FILED

NOV 17 2011

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

**Clerk Instructions**

<u>Dear Clerk:</u>

   Please give the original presentment refused for cause with red ink back to chief United States District judge presenter, Curtis L. COLLIER.

Please file the black ink copy of the refused for cause presentment into our Article III case jacket number 1:11-cv-99.

Please return the included copy of the Clerk Instructions and the color copy of the presentment Refused for Cause, which are marked COPY on the bottom of the pages, to me in the self-addressed stamped envelope included in this mailing, after you mark it properly as evidence of filing.

These documents are evidence if this presenter claims we have obligations to perform or makes false claims against us in the future.



René Jean & Y̶̶̶̶̶̶̶̶̶̶̶̶̶̶as (wife)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

*[handwritten: misnomer, clerk forgery]*

RENE JEAN SAUZEDDE and, )
YAEL FELICITAS SAUZEDDE, )
)
Plaintiffs, )
) 1:11-CV-99
v. )
) Chief Judge Curtis L. Collier
TIMOTHY GEITHNER, )
)
Defendant. )

*[handwritten stamp over document: Refused]*

*[handwritten in top right: FILED ... 08 2011 ... U.S. District Court Eastern ... of Tennessee At Winchester]*

## ORDER

The Court still has no record that *pro se* Plaintiffs Rene Jean Sauzedde and Yael Felicitas Sauzedde ("Plaintiffs") have properly served Defendant or that Defendant has waived process. Federal Rule of Civil Procedure 4(i) details the process that Plaintiffs must follow to properly serve the defendant in a suit brought against the United States or one of its officers. A party suing a United States officer only in an official capacity must "serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee." Fed. R. Civ. P. 4(i)(2). When a party is suing a United States officer "in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer." Fed. R. Civ. P. 4(i)(3). The Court has attached a copy of Rule 4 of the Federal Rules of Civil Procedure for Plaintiffs to review.

On September 20, 2011, Plaintiffs responded to the Court's show cause order (Court File No. 14) stating they had served Timothy Geithner (Court File No. 15). However, Plaintiffs have failed to show they have served the United States as required by Rule 4. Assuming Plaintiffs intend to sue

*[handwritten: - United States is not a party to the action, see CIVIL COVER SHEET, exhibit A]*
*[handwritten: - Timothy GEITHNER served in his capacity as U.S Governor of International Monetary Fund]*

*[handwritten: 18]*

Defendant in his individual capacity, the Court will give Plaintiffs a reasonable time to cure their failure to effect proper service pursuant to Rule 4(i)(4)(B). However, in light of the fact the Court has brought this and other issues to Plaintiffs' attention on two prior occasions, the Court **ORDERS** a response from Plaintiffs showing they have effected proper service within **thirty (30) days** of the entry of this order or this case will be dismissed pursuant to Fed. R. Civ. P. 4(m) and 41(b).

**SO ORDERED.**

**ENTER:**

*no wet ink signature*

/s/
_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

*— Timothy GEITHNER served in his capacity as IMF Governor, see exhibit B, AMENDMENT OF THE BRETTON WOODS AGREEMENTS ACT, pages 5 and 8.*

United States Code Annotated Currentness

Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
Title II. Commencing an Action; Service of Process, Pleadings, Motions, and Orders
→ **Rule 4. Summons**

**(a) Contents; Amendments.**

(1) *Contents.* A summons must:

(A) name the court and the parties;

(B) be directed to the defendant;

(C) state the name and address of the plaintiff's attorney or--if unrepresented--of the plaintiff;

(D) state the time within which the defendant must appear and defend;

(E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;

(F) be signed by the clerk; and

(G) bear the court's seal.

(2) *Amendments.* The court may permit a summons to be amended.

**(b) Issuance.** On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons--or a copy of a summons that is addressed to multiple defendants--must be issued for each defendant to be served.

**(c) Service.**

(1) *In General.* A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

(2) *By Whom.* Any person who is at least 18 years old and not a party may serve a summons and complaint.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(3)** *By a Marshal or Someone Specially Appointed.* At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.

**(d) Waiving Service.**

**(1)** *Requesting a Waiver.* An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:

(A) be in writing and be addressed:

(i) to the individual defendant; or

(ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;

(B) name the court where the complaint was filed;

(C) be accompanied by a copy of the complaint, two copies of a waiver form, and a prepaid means for returning the form;

(D) inform the defendant, using text prescribed in Form 5, of the consequences of waiving and not waiving service;

(E) state the date when the request is sent;

(F) give the defendant a reasonable time of at least 30 days after the request was sent--or at least 60 days if sent to the defendant outside any judicial district of the United States--to return the waiver; and

(G) be sent by first-class mail or other reliable means.

**(2)** *Failure to Waive.* If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

(A) the expenses later incurred in making service; and

(B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(3) *Time to Answer After a Waiver.* A defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent--or until 90 days after it was sent to the defendant outside any judicial district of the United States.

(4) *Results of Filing a Waiver.* When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.

(5) *Jurisdiction and Venue Not Waived.* Waiving service of a summons does not waive any objection to personal jurisdiction or to venue.

(e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

(f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

States attorney's office;

**(B)** send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

**(C)** if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

**(2)** *Agency; Corporation; Officer or Employee Sued in an Official Capacity.* To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

**(3)** *Officer or Employee Sued Individually.* To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

**(4)** *Extending Time.* The court must allow a party a reasonable time to cure its failure to:

**(A)** serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or

**(B)** serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

**(j) Serving a Foreign, State, or Local Government.**

**(1)** *Foreign State.* A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608.

**(2)** *State or Local Government.* A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:

**(A)** delivering a copy of the summons and of the complaint to its chief executive officer; or

**(B)** serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

**(k) Territorial Limits of Effective Service.**

**(1)** *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

over a defendant:

(A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;

(B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or

(C) when authorized by a federal statute.

(2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

**(l) Proving Service.**

(1) *Affidavit Required.* Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit.

(2) *Service Outside the United States.* Service not within any judicial district of the United States must be proved as follows:

(A) if made under Rule 4(f)(1), as provided in the applicable treaty or convention; or

(B) if made under Rule 4(f)(2) or (f)(3), by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee.

(3) *Validity of Service; Amending Proof.* Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended.

(m) Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

(n) Asserting Jurisdiction over Property or Assets.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) *Federal Law.*The court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule.

(2) *State Law.*On a showing that personal jurisdiction over a defendant cannot be obtained in the district where the action is brought by reasonable efforts to serve a summons under this rule, the court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district.

CREDIT(S)

(Amended January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; April 29, 1980, effective August 1, 1980; amended by Pub.L. 97-462, § 2, January 12, 1983, 96 Stat. 2527, effective 45 days after January 12, 1983; amended March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 30, 2007, effective December 1, 2007.)

Amendments received to 7-15-11

Westlaw. (C) 2011 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFF | DEFENDANTS |
|---|---|
| Rene Jean & Yael Felicitas (wife) | Timothy GEITHNER |

(b) ~~County of Residence of First Listed Plaintiff~~ _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **UNKNOWN**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) ~~Attorney's (Firm Name, Address, and Telephone Number)~~
Rene Jean & Yael Felicitas
c/o 1233 New Stansbury Road, Turtletown, Tennessee ▮▮▮▮▮

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Denizen of organic state ~~Citizen of Another State~~ | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation UN Charter Law | ☐ 6 | ☑ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | ☐ 730 Labor/Mgmt. Reporting | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

*(340 Marine and 345 Marine Product Liability boxes appear marked)*

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
(Counterclaim on false claim)
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Counterclaim upon false claim; Diversity of Citizenship 28 U.S.C. §§1331, 1333

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Injunctive Relief

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE William B. CARTER
DOCKET NUMBER 1:10-mc-13

DATE
4/21/2011 Clerk, Make no changes. Rene Jean & Yael Felicitas are not Pro Se.

~~SIGNATURE OF ATTORNEY OF RECORD~~

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

*Exhibit A*

# AMENDMENT OF THE BRETTON WOODS AGREEMENTS ACT

AUGUST 10, 1976.—Ordered to be printed

Mr. SPARKMAN, from the Committee on Foreign Relations,
submitted the following

# REPORT

[To accompany H.R. 13955]

The Committee on Foreign Relations, to which was referred the bill (H.R. 13955) to provide for amendment of the Bretton Woods Agreements Act and for other purposes, having considered the same, reports favorably thereon with amendment and recommends that the bill as amended do pass.

## PURPOSE OF THE BILL

The purpose of the bill H.R. 13955 is threefold. First, the bill authorizes the U.S. Governor of the International Monetary Fund (IMF) to sign for the United States the amended Articles of Agreement of the Fund. The new amendment IMF Articles of Agreement are printed in House of Representatives document no. 94–447. (The corresponding pages of the old Articles of Agreement are printed on the opposing pages of the House document.) Second, the bill authorizes an increase in the United States quota to the IMF by 1,705 million Special Drawing Rights (SDR) or approximately $2 billion with the SDR valued at 1 SDR $1.16 U.S. Third, H.R. 13955 amends three other acts of relevant financial legislation to reflect the changes in the amended IMF Articles of Agreement.

## COST OF THE BILL

There are no budgetary implications in this bill. The expansion of U.S. quota at the IMF is treated as an exchange of assets between the Fund and the U.S. Government. Such an exchange must be authorized but not appropriated since there is no uncompensated expenditure of fiscal resources.

57–010 O

*Exhibit B*

## HISTORICAL BACKGROUND

The international monetary system as it has been experienced over the last three decades in the creation of the Bretton Woods Conference in 1944. The conference agreement was authorized by the United States and the United Kingdom. The objective of the system was to provide financial stability in international markets. This was achieved by fixing exchange rates, by setting an official price for gold, by guaranteeing the conversion into gold of major currencies, and by forming the IMF to oversee the system and provide it with the credit facilities to stabilize the currencies of countries having balance of trade difficulties.

The dissolution of the monetary system created by the Bretton Woods Agreements can be traced to the early 1960s. The monetary system during this time period made a de facto transition from a "gold standard" to a dollar standard. The continuing annual balance of payments deficits of the United States, which were seen as a blessing in the 1950s when the new post-war monetary system was starved for liquidity, produced a dollar glut abroad by the early 1960s. There were more dollars abroad than the U.S. had gold. The U.S. commitment to redeem international dollars for gold became a physical impossibility. The reality of dollar convertibility ended. The strength of the dollar and the U.S. economy became the base for the system, as major trading countries were forced to hold their international monetary reserves in dollars.

Continuing U.S. balance of payments deficits through the 1960s meant the U.S. was providing more monetary paper for the real resources it bought from abroad. The dollar was overvalued in relation to other major currencies. The inflation generated by the Vietnam War expenditures further accelerated both the flow of dollars abroad and the overvaluation. However, during the 1960s, devaluation of the dollar was not politically acceptable in the United States nor desired abroad by our trading partners. A number of actions during the 1960s marked the U.S. efforts to help relieve pressures on the monetary system. The interest equalization tax (IET) and regulations on capital flows were instituted. Military offset agreements were negotiated. Agreements were made between the largest 10 countries on gold holdings, the price of gold and foreign dollar holdings. A system of currency swap arrangements between the major central banks came into being to help stem short-term speculative flows against major currencies. U.S. Export-Import Bank activities were expanded in the hopes of reducing the deficit and the domestic international sales corporation (DISC) authorized to further stimulate exports.

By the late 1960s, major pressures were building for change. The monetary system was not serving the objectives of major interest groups. The Europeans became sensitive to U.S. purchases of European firms with overvalued dollars. U.S. labor felt that jobs were being shipped abroad at the same time that imports were competing easily with domestic production because of the overvalued dollar. U.S. exporters were losing overseas markets and finding it difficult to compete with European firms in third country markets. Studies by the OECD (Organization for Economic Cooperation and Development)

Case 1:11-cv-00099  Document 20  Filed 11/17/11  Page 12 of 14  PageID #: 131

The first section of H.R. 13955 amends the Bretton Woods Agreements Act by adding Sections 24, 25 and 26 to the Act. Section 24 is the key section. It authorizes the U.S. Governor of the International Monetary Fund, the Secretary of the Treasury, to accept the amendments to the Articles of Agreement of the Fund. These amendments to to Articles are contained in the IMF Board of Governors resolution 31–4. It is this document that contains the provisions that move the exchange rate system from a fixed rate system to a floating rate system, substantially reduce the role of gold in the international monetary system, expand the quotas of the Fund by 33.6 percent, establish a Trust Fund and more lenient access to the Fund's resources, and modernize the operations of the Fund to include authority to create a Fund Council. The Council would be composed of finance ministers and would replace the current Interim Committee.

Section 25 specifically authorizes the increase in the U.S. quota in the IMF. The increase is 1.705 million Special Drawing Rights (SDR) or approximately $2 billion. The SDR value is based on an average daily value of 16 international currencies and fluctuates daily. Presently, the U.S. quota is SDR 6.700 or approximately $8 billion. The U.S. quota expansion is less than the general one-third expansion of the Fund's resources, therefore the U.S. percentage in the Fund drops from 22.93 percent to 21.53 percent. Roughly every five years since 1958–59, the Fund's resources have been increased to keep in step with the growth of international monetary resources and trade. This one-third increase is the fourth expansion.

Section 26 was added on the floor of the House of Representatives. It instructs the U.S. Governor to the IMF to vote against the formation of the new IMF Council if the Council will not follow the practice of weighted voting. Weighted voting provisions of the Fund are stated in Article XII, Section 5. They apply to all organs of the Fund and all votes. The addition of Article 26 has the effect of expressing the sentiment of the Congress that weighted voting in the Council is desirable.

Section 2 of H.R. 13955 was inserted by House Committee action and amends Section 3 of the Bretton Woods Agreements Act. Section 3 deals with the "Appointment of Governors, Executive Directors, and Alternates." The amendment anticipates the formation of the IMF Council by stipulating that if the Council is formed, the U.S. Governor of the Fund will serve as Councilor and have the authority to designate an alternate and associates. The second part of the amendments prohibits the Councilor, his alternate or associates from receiving salary or other compensation from the U.S. Government. This is standard language for all U.S. legislation on international financial institutions. The U.S. Secretary of the Treasury receives no compensation for representing the United States. The other positions are paid by the institution. The provision prohibits double salary payments.

The third section is a House provision which amends Section 5 of the original Act. Section 5 prohibits specific acts of the Executive Branch without prior Congressional authorization. H.R. 13955 amends Section 5 by adding part (g). Part (g) will prohibit the U.S. Governor to vote for the establishment of any new trust funds at the IMF without the prior approval of the Congress. The amendment reflects House sentiment that the Trust Fund, with its concessional lending

to specified poor members. is an economic aid mechanism and past U.S. Executive support for such a fund without the consent of Congress has been seen as a circumvention of Congressional authority. Similar concerns have been expressed in the U.S. Senate. The Committee on Foreign Relations amended the House amendment, inserting a technical phrase allowing the U.S. Governor to vote without Congressional authority on trust funds that might be managed by the IMF but would not include financial resources of the Fund. This initiative is explained fully in the section of this report titled Committee Action.

The Committee amended H.R. 13955 to insert a new Section 4 and consecutively renumbered House sections 4 through 9 to 5 through 10. Section 4 amends Section 14 of the Bretton Woods Agreements Act by designating the present language of Section 14 as paragraph "(a)" and adding a new paragraph lettered "(b)". The new paragraph provides legislative authority for the committees of Congress with legislative jurisdiction over international financial institutions or economic organizations to request from the President that he furnish any appropriate information provided by these institutions or organizations to any department or agency of the United States Government. The intent of the Committee in amending the legislation in this manner is explained in the section of this report entitled "Committee Action."

Section 5 of the bill. reflecting House Committee action. amends Section 17(a) of the Bretton Woods Agreements Act. The section ls with U.S. obligations under the 1962 General Agreements to ι‿rrow. The amendment changes the IMF Article reference to the appropriate paragraph in the new IMF Articles. It also deletes the last sentence of 17(a) which stated that any loan must take into consideration the U.S. balance of payments and reserve position. This provision was logically consistent with a fixed exchange rate system where reserves were needed to defend the par value of the dollar. Under a floating rate system, the reserves play a much smaller role in the adjustment mechanism.

Section 6, dealing with amendments to the Special Drawing Rights Act. and Section 7, dealing with the par Value Modification Act. contain a series of technical amendments that change appropriate references from the old IMF Articles of Agreement to the new amended Articles. or delete language that is inconsistent with the new Articles.

Sections 8 and 9 reflect House amendments to the Gold Reserve Act of 1934. These are technical amendments. with the exception of the amendment of Section 10(a). Section 10(a) of the present Act authorizes the Secretary of the Treasury to use the resources of the Exchange Stabilization Fund (ESF) "for the purposes of stabilizing the exchange value of the dollar." The amendment deletes this language since under the amended IMF Articles of Agreement there is no obligation to stabilize the dollar at a par value. The new language directs the Secretary of the Treasury to use the ESF "as he may deem necessary to and consistent with the United States obligations in the International Monetary Fund."

ection 10 of the bill states that the amendments made in Section 2, ს, ს, 6, 7, and 8 of the bill will become effective upon entry into force of the amendments to the IMF Articles of Agreement.